UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case Number: 22-cr-327 |
| JUSTIN SNOWDEN, : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing in the above-referenced case. On July 7, 2023, the defendant pled guilty to one count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2). For the reasons set forth below, the government recommends a sentence of 188 months of incarceration, at the bottom of the defendant's Sentencing Guideline's range, followed by ten years of supervised release.

## BACKGROUND

In August and September of 2022, the defendant, Justin Snowden, engaged in a course of conduct that encouraged and normalized the sexual abuse of young children by joining and participating in Kik groups devoted to the sexual exploitation of children and the distribution of child sexual abuse material. It was his active participation in these groups starting in August, and his eventual distribution of child pornography to an undercover officer in September, that culminated in the charges against him. Beginning on August 19, 2022, the defendant used the Kik account "twisted_fish410" with display name "James S" to communicate with an undercover officer (hereinafter "UC") based in San Francisco, California, regarding the purported sexual abuse of his daughter. They exchanged the following messages:

1

    **UC:** Aw what a cutie. What's her name

    **Defendant:** That's [Redacted]

    **UC:** Love that name! Do u guys play together?

    **Defendant:** yes

    **UC:** I like that. What all do you do together??

    **Defendant:** Just oral

    **UC:** How did you start?

    **Defendant:** Changing her one day

    **UC:** Mmm that's cute. Wait oral like u giving to her? Or her to uu?? Lol

    **Defendant:** Both

    **UC:** Do uu take any pics or vids?

    **Defendant:** No

    **UC:** Why not???

    **Defendant:** Cause

Just a few weeks later, on September 7, 2022, the defendant had a similar conversation with a UC based in Tampa, Florida, regarding the sexual abuse of his purported daughters. Excerpts of that Kik conversation include:

    **UC:** Thanks man do you and your girls play?

    **Defendant:** Yes; How about you

    **UC:** Yes since she was about 5; Been training her since; I'm in Maryland where you at

    **Defendant:** Same

………

    **UC:** You ever do meets?

**Defendant:** Never have

**UC:** You said you wanted someone to fuck your daughters in the group

**Defendant:** Yes I did; Just saying I never have that's all

………

**UC:** So what you looking for me to do; I'm hard asf

**Defendant:** How big are you?

**UC:** not big about 7

**Defendant:** Nice

**UC:** Your girls able to handle that?

**Defendant:** They have never been fucked

**UC:** So how is this going to work; hello

**Defendant:** We will talk about it more

**UC:** When

**Defendant:** Maybe this weekend

The next day, the defendant began communicating with a UC in Washington, D.C., which ultimately led to the charges in this case. The UC, a member of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation Task Force, initiated a chat conversation with the defendant, who was participating in a Kik group chat and was offering his purported 5- and 7-year-old daughters for sex with members in the group. Despite not having any children, the defendant sent non-explicit pictures of his girlfriend's minor daughters to the UC – believing he was a pedophile who was sexually abusing his own child. The Defendant claimed the pictures he sent were of his daughters. During that Kik chat, the defendant indicated that he had sexually abused his two daughters by placing his mouth on the little girls' vaginas while they are awake. The following is a portion of the conversation between the UC and the Defendant:

**UC:** How far have u been able to go and do you play[1] while asleep or awake?

**Defendant:** Awake and just eating there pussys. Can I see a pic of your.

In response, the UC sent the defendant two images of his purported daughter.[2] The defendant later asked the UC, "you got nudes of your?" He then sent a picture of a little girl's face, who he claimed was his daughter, with a dark substance on the child's face. He told the UC that it was a "trib," meaning a "tribute" photograph of his daughter.[3] Later in the chat, the defendant sent another image of a child who he claimed to be his daughter. The image depicts a nude toddler, lying on her back with her legs spread. A male hand can be seen in the photograph, placing a purple, adult sex toy on the child's bare vagina.

During the course of the chat, the defendant asked the UC for additional sexually explicit images of his purported 8-year-old daughter asking, "can I see her little pussy." The defendant then sent the UC a video, which depicts an adult male ejaculating on the bare vagina of a prepubescent child. The child appears to be between the ages of 5 and 8 years old. The defendant also informed the UC that he resides in Baltimore, and that he has a girlfriend who is not aware that he was sexually abusing his children.

During the course of the investigation, law enforcement identified the defendant's girlfriend, (hereinafter "Witness 1") and determined that the non-explicit images that the defendant sent to the UC were images of her daughters. Law enforcement also confirmed that the defendant did not have access to Witness 1's children and did not have any children of his own.

On September 22, 2022, the defendant was arrested for his conduct. On September 29, 2022, the Grand Jury returned an indictment charging him with one count of Distribution of Child

---

[1] The term "play" is believed to refer to the sexual abuse of a child.
[2] The image was not of a real child.
[3] A "tribute" is typically a non-explicit photograph offered to encourage the exchange of additional images, to include explicit images.

Pornography and one count of Attempted Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1).  On July 7, 2023, the defendant entered a guilty plea to Count 1 of the Indictment, Distribution of Child Pornography which carries a minimum term of 5 years imprisonment with a maximum term of 20 years. 18 U.S.C. § 2252(a)(2) and (b)(1).  Following any term of imprisonment, the Defendant must be placed on supervised release for a term of at least 5 years up to a lifetime term. 18 U.S.C. § 3583(k).  Sentencing is scheduled for November 7, 2023.

## DISCUSSION AND RECOMMENDATION

### I. Generally Applicable Legal Principles

In determining an appropriate sentence, a district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range.  *See United States v. Gall*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). Then, after giving both parties an opportunity to argue for an appropriate sentence, the district court should consider each of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

In addition to the § 3553 factors, in child pornography cases the court should also consider the reports prepared by the U.S. Sentencing Commission specifically addressing sentencing in such

cases. In 2012 and 2021, the U.S. Sentencing Commission published reports to Congress analyzing federal sentences in both production and non-production child pornography offenses. The reports recommend three categories of aggravating factors that courts should consider when imposing sentences in non-production cases: content, community, and conduct. The Commission further explained how these factors should affect a defendant's sentence:

> The presence of aggravating factors from any of these three categories, even without the presence of any aggravating factors from the other two categories, warrants enhanced punishment depending on the degree that aggravating factors from that category are present in a particular case. The presence of aggravating factors from multiple categories generally would warrant a more severe penalty than the presence of aggravating factors from a single category.

U.S. Sent'g Comm'n, Report to Congress: Federal Child Pornography Offenses (2012) at 321 (hereinafter 2012 Report).

*Content*

As outlined in the 2012 Report, this factor directs courts to evaluate the content of an offender's collection and behavior "in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technology." 2012 Report at 320.

*Community*

This factor directs the Court to evaluate "the degree of an offender's engagement with other offenders — in particular, in an Internet 'community' devoted to child pornography and child sexual exploitation." 2012 Report at 320. The Commission distinguishes between impersonal file-sharing exchanges, which involve "anonymous, indiscriminate" open exchange and no two-way communication, versus "personal" distribution in closed groups, involving two-way communication concerning child pornography and child exploitation. *Id.* at 313-14, 324.

*Conduct*

The third factor asks courts to assess whether an offender "has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense." 2012 Report at 320. Notably, the Commission recommends that, in addition to criminal offenses, courts consider "non-criminal acts of sexually deviant behavior" because such behavior also indicates sexual dangerousness. *Id.* at. 325.

## II.     Applicable Guidelines Range

Distribution of child pornography is governed by U.S.S.G. § 2G2.2.  As correctly calculated in the Presentence Investigation Report, the base level is 22. ECF No. 51. There is a two-level increase because a prepubescent minor was depicted, §2G2.2(b)(2); a two-level increase for distribution of child pornography, §2G2.2(b)(3;) a four-level increase for depiction of a toddler, §2G2.2(b)(4); a two-level increase for use of a computer, §2G2.2(b)(6); and a two-level increase for more than 10 images, §2G2.2(b)(7). Therefore, the adjusted offense level is 34. The government agreed to recommend a three-level decrease for the defendant's acceptance of responsibility, §§3E1.1(a) and (b), resulting in a total offense level of at least 31.

Based on the Defendant's criminal history detailing his 10 prior criminal convictions, the Defendant's criminal history category is VI.  A total offense level of 31 and a criminal history category of VI, makes Defendant's advisory sentencing guidelines range 188-253 months' imprisonment.

## III.     Government's Sentencing Recommendation

Here, the United States recommends a sentence of 188 months of incarceration, the bottom of the defendant's sentencing guidelines range, to be followed by ten years of supervised release. This takes into account the seriousness of the defendant's conduct, his lengthy criminal history, and

ensures that he will be monitored for a significant period of time upon his release, thus protecting the community from harm.

### A. Nature and Circumstances of the Offense

On September 8, 2022, defendant Snowden engaged with a Washington D.C.-based UC on the platform Kik, ostensibly offering up his own daughters for sex with other individuals. He then used the conversation about abusing his purported daughters as a springboard to both seek out additional child sexual abuse material for his own purposes and to also distribute child sexual abuse material. In the process, he shared non-explicit images of two real little girls – who happened to be the children of his girlfriend – with someone who he believed had a sexual in children, showing a complete lack of concern for their safety and wellbeing.

Further, the defendant's interaction with the Washington D.C.-based UC was the third time in less than a month that he engaged with undercover law enforcement around the country to discuss the sexual abuse of children. Between August and September of 2022, the defendant was an active member of Kik and repeatedly engaged with an online community of individuals who openly expressed an interest in sexually abusing children. His participation in this online community is an aggravating factor as recognized by the Sentencing Commission. The fact that the defendant does not have his own daughters and was communicating with undercover officers during that time does not change the seriousness of his conduct. During each of the three chats with UCs the defendant participated in normalizing and encouraging the sexual abuse of children. On each occasion, he had every reason to believe that he was chatting with someone who intended to sexually abuse a child and it was only because of the intervention of law enforcement that the defendant's actions did not lead to the hands-on sexual abuse of an actual child. The presence of this aggravating factor supports a within-Guidelines sentence, contrary to the assertion by Probation that the court should vary downward.

In the course of his chats, the defendant distributed child pornography, a crime that not only further encourages and normalizes the abuse of children, but that harms actual victims of child sexual abuse. Children depicted in images and videos depicting their sexual abuse are traumatized and victimized in the worst way imaginable at the time the images were created, and they are re-victimized each time an individual, like the defendant, views the images for their own sexual gratification. As explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.
>
> ...every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011)(quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors). Given the nature of the defendant's criminal conduct, including his active participation in an online community focused on the sexual abuse of children, a Guidelines sentence is appropriate.

### B. History and Characteristics of the Defendant

Defendant Snowden has a lengthy criminal history including multiple convictions for burglary and theft and, at the time of the instant offense, he was on probation in Anne Arundel County, Maryland, for a conviction for one count of Third Degree Burglary. These numerous prior convictions result in a criminal history Category VI, with a sentencing range of 188-235 months.

Despite his significant criminal history, the United States recognizes that the defendant's prior convictions include predominately drug-fueled property crimes and do not include prior sex crimes or crimes against children. While the United States cannot be certain that the defendant has not previously engaged in crimes against children, his conduct in August and September of 2022 appears to be different in kind from his prior known criminal conduct. It is unclear whether the conduct at issue in this case is an aberration for the defendant, or an escalation of his conduct. Thus, the United Sates recommends a within-Guidelines sentence at the very bottom of the defendant's applicable range. Such a sentence fully punishes the defendant's conduct here, while allowing for the possibility that this crime may have been atypical in light of his long-term drug abuse and history of property crimes.

> **C.    Seriousness of the Offense, Promotion of Respect for the Law, and Just Punishment for the Offense**

Child pornography offenses are extremely serious because they result in perpetual harm to the most vulnerable victims, while simultaneously validating and normalizing the sexual exploitation of children. Courts across the country have recognized this:

> There can be no keener revelation of a society's soul than the way in which it treats its children. Given the current statistics surrounding child pornography, we are living in a country that is losing its soul.
>
> Child pornography is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of the defendants, sorry that their actions were discovered by law enforcement.

*United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *affirmed* 669 F.3d 723 (6th Cir. 2012).[4]

---

[4] *See also In re Amy Unknown*, 636 F.3d 190, 201 n.12 (5th Cir. 2011) (*citing United States v. Norris*, 159

When enacting mandatory minimum penalties for those who produce and traffic in the sexual abuse and exploitation of children, Congress similarly described the evil of child pornography:

> [W]here children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years . . . [The] existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children . . . it inflames the desires of . . . pedophiles . . . who prey on children, thereby increasing the creation of and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials.

Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-27 (1996).

There is perhaps no greater invasion of privacy than that caused by the dissemination of child pornography. With a click of the button on a camera, the sexual abuse of these children is memorialized forever. It is terrible enough that a child must live with the memory of his or her initial abuse. It is hard to even comprehend how that child could then learn to cope with the fact that strangers everywhere are using the worst moments of that child's life to sexually gratify themselves and that he or she can do nothing to stop them from continuing to do so. The only recourse that these children have is the strong enforcement of the laws that hold these offenders accountable for the tremendous damage they have inflicted upon countless child victims.

Distributors of child pornography, like the defendant, create a market and demand for materials depicting the sexual abuse and exploitation of real children. They contribute to the cycle of abuse and are in part responsible for the harm suffered by the children used to produce the materials in their collections. *See United States v. Goff,* 501 F.3d 250, 259-260 (3d Cir. 2007) ("Children are

---

F.3d 926 (5th Cir. 1998) (describing how the distribution of child pornography creates a marketplace for images of children, perpetuating abuse); *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005); *United States v. Grosenheider*, 200 F.3d 321, 332-34 (5th Cir. 2000).

11

exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography"). In *United States v. Goldberg,* the Seventh Circuit stated:

> The district judge was influenced by the erroneous belief that a sentence affects only the life of the criminal and not the lives of his victims. Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded-both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. [Citations omitted].

491 F.3d 668, 672 (7th Cir. 2007). In other words, even if consumers of child pornography do not themselves molest children, their actions directly contribute to the abuse of children.

Here, the defendant made the conscious decision to distribute child pornography and to solicit an undercover officer to send him images of a child being exploited. A period of incarceration is necessary to promote respect for the law, ensure just punishment, and to reflect the seriousness of the defendant's offense.

### D.  Adequate Deterrence and Protection of the Public

The receipt of child pornography endangers the public by encouraging the rape, violence, and abuse of children. In *United States v. Miller*, the Fifth Circuit stated:

> [R]eal children are being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by [defendant] and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way. If a handful of pornographic images taken twenty years ago were sufficient to satisfy the perverse desires of those who possess and traffic in child pornography, we would not have the huge industry that exists internationally today.

665 F.3d 114, 123 (5th Cir. 2011). The importance of deterrence with respect to child pornography offenses is well-established. Serious penalties for child pornography offenders decrease the number of participants in the market, which in turn decreases the need for its production:

> The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of

>    deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

*Goldberg*, 491 F.3d at 672; *see also Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); *Goff*, 501 F.3d at 261 ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").

Here, the defendant's sentence should be sufficient to deter not only the defendant from reoffending in the future, but also to deter the criminal conduct of others who engage in, or contemplate engaging in, the trafficking of child sexual abuse material. As stated in *Goldberg*, "[s]entences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for trafficking in child pornography, the greater the customer demand for it and so the more will be produced." 491 F.3d at 672. *See also Goff*, 501 F.3d at 261 (stating in a child pornography possession case that "deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing"). The government's recommended sentence of 188 months' incarceration, which is within the sentencing guidelines, adequately serves this purpose.

### E. Kinds of Sentences Available and the Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) requires courts to consider the need to avoid unwarranted sentencing disparities among defendants "with similar records who have been found guilty of similar conduct." However, it "does not require the district court to avoid sentencing disparities between [ ] defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010). Here, the government's recommended sentence is within the Sentencing Guidelines range; per the plea agreement, both parties have agreed that this range is reasonable. The low-end sentence recommended by the United States takes into account the defendant's active participation in an online community devoted to the exploitation of children, his distribution of child pornography to an undercover officer, his lengthy criminal history, and his poor performance on supervision. Unlike many offenders sentenced for child pornography, who are frequently first-time offenders, the defendant's lengthy criminal places him in the highest criminal history box. Thus, it is difficult to compare the defendant's Sentencing Guidelines to many others sentenced for the same crime. Indeed, according to the Judiciary Sentencing Information (JSIN):

> During the last five fiscal years (FY2018-2022), there was an insufficient number of defendants (1) whose primary guideline was §2G2.2, with a Final Offense Level of 31 and a Criminal History Category of VI, after excluding defendants who received a §5K1.1 substantial assistance departure; and (2) who received a sentence of imprisonment in whole or in part.

This indicates that there is insufficient data to allow a comparison in sentences on a national scale because there are not enough offenders who are similarly situated to the defendant. Thus, a sentence within the Sentencing Guidelines is the most sure way to avoid any sentencing disparity, where the defendant's history and offense are not readily comparable to other offenders.

F. **The United States is Not Seeking Restitution at This Time**

In child pornography cases, restitution is mandatory to any person "harmed as a result of" a defendant's crime. *See* 18 U.S.C. § 2259(a), (c); *see also United States v. Monzel*, 930 F.3d 470, 476 (D.C. Cir. 2019); *United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015) ("Pursuant to 18 U.S.C. § 2259, the victims of certain federal crimes, including possession of child pornography, are entitled to mandatory restitution."). Restitution includes "the full amount of the victim's losses," which may include any costs incurred by the victim for:

> (A) Medical services relating to physical, psychiatric, or psychological care;
> (B) Physical and occupational therapy or rehabilitation;
> (C) Necessary transportation, temporary housing, and child care expenses;
> (D) Lost income;
> (E) Attorneys' fees, as well as other costs incurred; and
> (F) Any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(a), (b)(3); *see also United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015).

At this time the United States is not submitting any restitution requests on behalf of any known victim because no victims have made such a request. If the United States later identifies any victims who are seeking restitution the government may submit a restitution request in the future. *See* 18 U.S.C. § 3664(d)(5).

## CONCLUSION

For the reasons addressed above, the United States respectfully recommends that the defendant be sentenced to a term of incarceration of 188 months, followed by ten years of supervised release. Such a sentence contemplates not only the relevant guidelines range set forth for this offense, but also adequately reflects the factors as outlined in 18 U.S.C. Section 3553(a).

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:        */s/ Jocelyn Bond*
Jocelyn Bond
DC Bar #1008904
Assistant United States Attorney
United States Attorney's Office
601 D Street, NW
Washington, DC 20530
Phone: (202) 809-0793


       */s/ Angelica Carrasco*
Angelica Carrasco
New Jersey Bar #154252015
Trial Attorney
United States Department of Justice
Child Exploitation & Obscenity Section
1301 New York Avenue, N.W.
Washington, D.C. 20005